<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
:
ATLAS COMMUNICATIONS :
TECHNOLOGY, INC., :
: Case No. 3:19-cv-19033-BRM-DEA
Plaintiff, :
:
v. :
:
: **OPINION**
:
DXC TECHNOLOGY SERVICES, LLC, :
and CITIBANK, N.A., :
:
Defendants. :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Citibank, N.A.'s ("Citibank" or "Defendant") Motion to Dismiss Plaintiff Atlas Communications Technology, Inc.'s ("Atlas" or "Plaintiff") Amended Complaint. (ECF No. 18.) Atlas opposes the Motion. (ECF No. 24.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Citibank's Motion to Dismiss is **GRANTED.**

### I.   BACKGROUND

For the purposes of deciding Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action stems from an agreement (the "Statement of Work" or "SOW") dated May 15, 2017, between Atlas and DXC technology services ("DXC") in support of Citibank. (ECF No. 16 ¶ 6.) Atlas is a staffing service provider based in Plainsboro, New Jersey, and DCX is a system integration and information services company with its principal place of business in Tysons Corner, Virginia. (*Id.* ¶¶ 3-4.) The SOW was a renewal contract that continued services provided to DXC's predecessor. (*Id.* ¶ 6.) Additionally, the SOW provides that Atlas will supply DXC with qualified on-site technicians to "provide local support in the fulfillment of maintenance and repair activities, IMACs and Projects related to related to in-scope End User Technology products and services at Citibank sites throughout the Country." (*Id.* ¶ 7.)

Pursuant to the SOW, Atlas provided more than fifty consultants to DXC—who directed the consultants' time, attendance, and scope of work for Citibank sites. (*Id.* ¶ 8.) Atlas provided DXC with monthly invoices and expenses, which were sent to and approved by DXC Account General Manager, Mark Angarola. (*Id.* ¶¶ 9-10.) In February 2019, DXC notified Atlas that DXC suspected that certain Atlas consultants and DXC employees were engaged in a scheme to defraud DXC. (*Id.* ¶¶ 11-12.) In response to the allegations, Atlas immediately terminated the consultants and both Atlas and DXC conducted independent investigations. (*Id.* 12-13.) During the investigation, DXC advised Atlas that Mark Angarola was at the center of the scheme and the terminated Atlas consultants were also involved. (*Id.* ¶ 14.) According to DXC, Angarola directed the hiring on consultants who he knew personally and had those individuals submit fabricated time sheets and expenses to Atlas for payment by DXC. (*Id.* ¶ 15.)

Ultimately, DXC determined Atlas had assessed a 10% mark-up on the expenses incurred

by its consultants, though Atlas believed this mark-up had been approved by Angarola. (*Id.* ¶ 17.) In response, Atlas offered to reimburse DXC for the 10% mark-up charge dating back to October 2015. (*Id.* ¶ 18.) Concomitantly, Atlas continued to provide DXC with technicians to service the Citibank sites. (*Id.* ¶ 19.) However, contrary to the terms of the SOW, DXC refused to pay Atlas's invoices and has resorted to self-help. (*Id.* ¶¶ 20-21.) Notwithstanding, Atlas continued to render services to DXC based on DXC's representations that payment was forthcoming. (*Id.* ¶ 23.) To this day, DXC has not paid Atlas. (*Id.* ¶ 22.)

Furthermore, in July and August 2019, Atlas learned that DXC had—without notice or approval from Atlas—offered employment to nearly all of Atlas's employees in knowing violation of their employment agreement. (*Id.* ¶¶ 25-26.) Despite Atlas's requests to cease, DXC has hired more than fifty of Atlas's former employees. (*Id.* ¶ 28.)

On October 16, 2019, Atlas filed a four-count Complaint against DXC and Citibank (ECF No. 1) and on December 5, 2019, Atlas filed a six-count Amended Complaint asserting claims of breach of contract (Counts One and Six), tortious interference with contract (Count Two), unjust enrichment (Count Three), fraudulent inducement (Count Four), and quantum meruit (Count Five). (ECF No. 16.) On January 6, 2020, Citibank filed a Motion to Dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 18.) On January 21, 2020, Atlas filed an Opposition to Citibank's Motion to Dismiss. (ECF No. 24.) On January 27, 2020, Citibank filed a Reply to Atlas's Opposition. (ECF No. 26.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of*

*Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

4

'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III.  DECISION

#### A.  Breach of Contract

Citibank contends Atlas has failed to state a claim for breach of contract because (1) Atlas has failed to allege sufficient facts to assert a third-party beneficiary claim, (2) the contract expressly prohibits third-party recovery, and (3) Citibank has a valid defense. (ECF No. 8-1 at 11-15.)

Under New Jersey law[1], to state a claim for breach of contract, a plaintiff must show that (1) a valid contract existed, (2) the defendant failed to perform under the contract, (3) damages

---

[1] Citibank cited authority under New York law because it contends New York law governs the contract between DXC and Citibank. (*See* ECF No. 18-1 at 11 n.2.) However, asking this Court to apply New York law is a choice of law issue, which is premature at this stage. *See Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (postponing a choice of law analysis until after the motion to dismiss stage when there exists a more complete factual record).

5

flowing therefrom, and (4) the party stating the claim performed its own contractual obligations. *See Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

To state a claim as a third-party beneficiary, a plaintiff must "show that the contract was made for the benefit of that third party within the intent and contemplation of the contracting parties." *Grant v. Coca-Cola Bottling Co. of New York, Inc.*, 780 F. Supp. 246, 248-49 (D.N.J. 1991) (citing *First National State Bank of New Jersey v. Commonwealth Federal Savings and Loan Assoc.*, 610 F.2d 164, 170 (3d Cir. 1980)). "A third-party who merely stands to benefit from a contract is no more than an incidental beneficiary who incurs no contractual right to enforce the contract." *Id.* (citing Restatement (Second) of Contracts § 315 at 477 (1979)). "[T]he intention of the parties to recognize a right of performance in the third party is the critical factor that governs the characterization of the beneficiary." *Berel Co. v. Sencit F/G McKinley Assoc.*, 710 F. Supp. 530, 537 (D.N.J. 1989).

Here, Atlas alleges they are a third-party beneficiary of a written contract between Citibank and DXC. (ECF No. 16 ¶¶ 56-57.) Citibank, however, contends this conclusory statement is insufficient to state a claim for a third-party beneficiary breach of contract claim. The Court agrees. The "critical factor" in determining whether a third party can assert rights as a third-party beneficiary is the intention of the contracting parties. *See Berel*, 710 F. Supp. at 537. Indeed, the "real test" in determining if a party is a third-party beneficiary to a contract is "whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts." *Brooklawn v. Brooklawn Housing Corp.*, 11 A.2d 83, 85 (N.J. 1940). Atlas's

---

Nevertheless, this Court must still determine whether Atlas has stated a breach of contract claim. Because Atlas brought this claim under New Jersey law, the Court will, at this stage, apply New Jersey law in examining the sufficiency of Atlas's claims. *See id.* (applying New Jersey law at the motion to dismiss stage where plaintiffs brought contract claims under New Jersey law).

conclusory allegation is insufficient to demonstrate Citibank and DXC intended for their contract to give Atlas a benefit which might be enforced in the courts. *See Villegas v. Correctional Med. Servs., Inc.*, No. 14-7337, 2016 WL 3708218 (D.N.J. July 12, 2016) (dismissing third-party beneficiary claim where plaintiff had not provided supporting facts "[o]ther than his conclusory allegation that he is an intended third-party beneficiary). As such, Atlas has failed to adequately allege a third-party beneficiary claim.

Nevertheless, Atlas contends dismissal of their third-party beneficiary claim against Citibank is premature at this stage because discovery has yet to take place. (ECF No. 24 at 11-12.) Generally, questions of contract interpretation should not be decided without the benefit of discovery and a full evidentiary record. *See Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699 (D.N.J. 2011). However, discovery is only appropriate where there are different interpretations or ambiguities within a contract. *See Hofman v. Time Warner Cable, Inc.*, No. 12-978, 2013 WL 2460121, at *7 (D.N.J. June 6, 2013). Atlas has not identified an ambiguity or differing interpretation of the contract between Citibank and DXC. Therefore, this Court may appropriately dismiss the third-party beneficiary claim at this stage. Accordingly, Citibank's Motion to Dismiss Count Six of the Amended Complaint is **GRANTED.**

### B. Equitable Claims

Citibank contends Atlas has failed to plead the requisite elements to state its equitable claims for unjust enrichment and quantum meruit. (ECF No. 18-1 at 15-16.) The Court will address each claim in turn.

To state a claim for recovery based on quantum meruit, a plaintiff must establish four elements: (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the

reasonable value of the services. *Starkey, Kelly, Blaney, & White v. Estate of Nicolaysen*, 796 A.2d 238, 242-43 (N.J. 2002) (citing *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir. 1994)). The related theory of unjust enrichment involves two essential elements: (1) a plaintiff must demonstrate that a defendant received a benefit; and (2) that retention of that benefit would be unjust. *TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC*, No. 12-3355, 2013 WL 1223643, at *4-5 (D.N.J. Mar. 25, 2013) (citing *MK Strategies, LLC v. Ann Taylor Stores Corp.*, No. 07-2519, 2007 WL 4322796, at *3 (D.N.J. Dec. 6, 2007)). In order to prove this second element, a plaintiff must show that it expected remuneration from the defendant at the time it performed or conferred a benefit on the defendant. *Id.* Therefore, both the second element of an unjust enrichment claim and the third element of a quantum meruit claim require a showing of an expectation of compensation or payment from the party against whom relief is sought.

Citibank contends Atlas's equitable claims must fail because Atlas has not alleged it expected payment directly from Citibank. (ECF No. 25 at 11.) The Court agrees. Unjust enrichment and quantum meruit claims require dismissal where a plaintiff fails to allege it expected compensation from the defendant. *See TBI Unlimited*, 2013 WL 12236, at *4-5 (dismissing equitable claims where plaintiff "fail[ed] to make a showing of an expectation of compensation" from defendant); *see also MK Strategies*, 2007 WL 4322796, at *3 (dismissing equitable claims where plaintiff failed to allege expectation of payment from defendant). Atlas does not allege it expected payment from Citibank. Rather, Atlas only alleges it requested payment for work performed on the Citibank project solely from DXC. (ECF No. 16 ¶¶ 20, 22-23.) Nevertheless, Atlas contends they are not required to allege they expected payment from Citibank and instead may maintain a claim by alleging Citibank "passively received a benefit that it would be unconscionable to retain." (ECF No. 24 at 20.) However, in so arguing, Atlas inappropriately relies

8

on Pennsylvania law. (*Id.*) As stated above, equitable claims under New Jersey law require an allegation of expectation of compensation. Therefore, because Atlas fails to make this allegation, their equitable claims against Citibank must be dismissed. Accordingly, Citibank's Motion to Dismiss Counts Three and Five of the Amended Complaint is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Citibank's Motion to Dismiss is **GRANTED**. An appropriate order will follow.

**Date: August 31, 2020**             */s/ Brian R. Martinotti*  
                                      **HON. BRIAN R. MARTINOTTI**  
                                      **UNITED STATES DISTRICT JUDGE**